MARY DANIELS *vs.* NEW ENGLAND COTTON YARN COMPANY.

Bristol. January 16, 1905. — May 20, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

In an action by a girl employed in a factory against her employer for personal injuries, evidence that the plaintiff was of less than average intelligence is immaterial upon the issue of the defendant's negligence unless there also is evi-

dence that the defendant through its agents knew or ought to have known that she was of less than average intelligence.

If the proprietor of a factory posts notices in places where they can be read by the operatives warning them against wearing loose garments and flowing hair which may be caught in the machinery, he has performed his whole duty in this regard without calling the attention of the operatives to the notices or seeing that they read them thoroughly.

It is not the duty of the proprietor of a factory to warn a girl fourteen years and five months of age against the danger of wearing her hair hanging in a braid down her back so that it may be caught and wound up on a roller, if the girl herself knows that the rollers wind up thread, and means not to get any part of herself, her dress, sleeves, hair or anything else wound up in the rollers.

LATHROP, J. This is an action of tort for personal injuries sustained by the plaintiff while in the employ of the defendant. At the trial in the Superior Court at the close of the evidence the judge directed a verdict for the defendant; and the case is before us on the plaintiff's exceptions.

At the time of the accident, on January 21, 1902, the plaintiff was fourteen years and five months old, and was four feet and eleven inches in height. She began work for the defendant on September 2, 1901, and was constantly employed on a "Foster Comb Winder," having been put in charge of one of the operators of that machine for the purposes of instruction. There were two of these comb winders placed end to end along the northerly side of the room in which the plaintiff worked. Each machine was about thirty feet long and about five feet wide. The machinery and mechanism were the same on each side. On the lower part of the frame were upright pins on which the operatives placed paper tubes with cotton thread wound on them called "cops." The thread from a pair of these cops was drawn upward and wound by a "winder" in a double strand upon a large paper tube, so as to form a large spool of thread. There were fifty of these spools which were placed end to end in a long row on each side of a winder, and there were two girls on a side, each tending twenty-five spools. There was a passage-way called the "winder alley" about two feet four inches wide between the comb winders and the side of the building. Next south of the winders, and in a line parallel with them, were placed several machines called twisters, and there was a passage-way called the "twister alley" between the winder and the twister, two feet and eleven inches wide.

When the cops became empty of cotton they often were drawn upward by the unwinding thread and off the pins on which they were placed, and they would fly off and fall to the floor, and it was the duty of the girls employed on the comb winders to pick them up. These empty cops would roll around on the floor; sometimes they went over the twister and sometimes they went under it.

When the plaintiff applied for employment she. was dressed in a short skirt and wore her hair in a braid, the lower end of which came down to about the middle of her back. She wore it in the same way down to the time of the accident. She testified that there were three other girls, about her age, who wore their hair in the same way.

The accident happened while the plaintiff was working in the twister alley and while she was rising from a stooping position with one knee on the floor, with her back to the twister, engaged in picking up the empty cops from the floor. The end of her braid in some manner was wound around one of the long spool-bearing shafts of the twister, just as she arose to a standing position, and her entire scalp was torn from her head before the machine could be stopped.

Before she was employed in the mill, she had attended school for seven years, and there was evidence from her teachers that she was not of average intelligence, as she took seven years to complete a five years' course. For the purpose of showing that the plaintiff was below the average grade of intelligence two physicians who had attended her and observed her at the hospital almost continually from the day of the accident to the time of the trial, which was on May 7, 1903, and who were prepared to testify that they considered her below the average grade of intelligence, were asked the following question : " From your observation of her when she first came to the hospital and your observation since, apart from the injury and the consequences of it, what do you say as to whether or not she was of the average grade of intelligence ? " This question was excluded; and the plaintiff excepted.

The accident in this case evidently was caused by the plaintiff's rising up from a stooping position in too close proximity to the twister. By so doing her hair was caught. If she was not

of average intelligence, this would bear on the question of her due care, but would not bear on the question of the defendant's negligence, unless the agent of the defendant who employed her, or some other agent during her employment, knew or ought to have known that she was of less than average intelligence. There is no evidence whatever of this. At the time of the accident she had worked in the mill for over four months without any mishap. She knew what her duties were, and had performed them well.

If we assume in favor of the plaintiff that there was evidence for the jury that the plaintiff was in the exercise of due care, the testimony of the physicians which was excluded is immaterial.

The only remaining question is whether there was evidence for the jury on the question of negligence on the part of the defendant, and we find none. It is not contended that there was anything out of order in the machines, or that they were placed improperly. The contention is that the plaintiff should have been warned of the danger of wearing her hair down her back. There are two answers to this contention. In the first place, the defendant had posted notices in different parts of the room in which the plaintiff worked, of which the eighth paragraph was as follows: " All employees while in the works are cautioned against wearing loose sacks, or loose or flowing sleeves, and all female employees are cautioned against wearing neckties or aprons having long ends or strings, or dresses which trail on the floor, or wearing their hair flowing or in hanging braids or in long curls." The plaintiff testified that she saw one of the notices, and read a part, but not the whole; that she read about the time for going to work and about a roller, but did not read the rest; that she knew it was a notice.

We are of opinion that an employer performs his whole duty where, as in this case, he posts notices in a place where they can be read by the employees ; and that he is not obliged to call the attention of each operative to the notices. The notices in this case were printed in English, Portuguese, French and German, one card for each language. The plaintiff could read English, and while the notices were in small type, she could read them.

In the next place, the only instruction which it is complained was not given is that she should have been told that if she got

her clothes or hair against the machine or rollers she might get caught and wound up. If she knew the danger there was no need of instructing her in regard to it. *Wilson* v. *Massachusetts Cotton Mills*, 169 Mass. 67, 71. *McIntire* v. *White*, 171 Mass. 170. It clearly appears from the plaintiff's testimony that she knew that the rollers wound up thread, and that she did not mean to get any part of herself, her dress, sleeves, hair, or anything else wound up in the rollers.

There was no evidence to warrant a finding that the accident was caused by the failure of the defendant to perform a legal duty. *Silvia* v. *Sagamore Manuf. Co.* 177 Mass. 476, 479, and cases cited.

*Exceptions overruled.*

*M. R. Hitch & F. M. Sparrow*, for the plaintiff.
*A. J. Jennings*, (*A. E. Perry* with him,) for the defendant.