PATRICK O'BRIEN *vs.* HARGRAVES MILLS.

Bristol.    October 29, 1907. — November 26, 1907.

Present: KNOWLTON, C. J., MORTON, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

In an action by a third hand in a factory against his employer for injuries from having his arm drawn in between a belt and a shaft and torn off at the elbow, when on the order of the second hand he had gone up a ladder to tie with a piece of string a belt which had come off the pulleys and was lying on the shafting, the plaintiff testified that he had had no experience about tying belts and never had seen them tied and knew nothing of the danger involved in attempting to tie them, that when he had been appointed third hand about a week before the accident he told the defendant's overseer that he knew nothing about that work, but that the overseer had told him to take it, saying that he and the second hand would teach him how to fix the speeders and put on belts, that the second hand had called his attention to the method of repairing speeders and to the danger in putting on belts, but never had spoken to him about the danger of tying belts or the way to tie them, and that on the occasion of the accident the second hand gave him no instruction or warning, having placed the ladder for the plaintiff and then having gone away while the plaintiff was getting the string.  By the cross-examination of the plaintiff it appeared that he was well aware of the danger of going near a moving shaft, and was aware that anything near it would be caught and drawn in and wound around it by the belt, and that this was one of the things that the second hand referred to when he warned the plaintiff of the danger in putting on belts, and the plaintiff admitted that the overseer had told him, if there was anything wrong and he did not know anything about it, to go and tell the second hand who would fix it

for him or show him, and that when he went to tie this belt he did not know where to tie it, but he did not ask the second hand on this occasion because he thought that if there was any danger the second hand would tell him. It appeared that the way adopted by the plaintiff in attempting to tie the belt was dangerous, and it was shown by an expert that there were two other ways in which the belt might have been tied which were free from danger. *Held*, that there was no evidence for the jury that the plaintiff was in the exercise of due care, because under the circumstances in which he had been instructed to go to the second hand for information, he chose to take it for granted that he needed no such information and that he could go about the work safely in his own way, assuming that if it was necessary the second hand would volunteer the information for which the plaintiff had been instructed to apply, if not availing himself of the second hand's temporary absence to act upon his own initiative in direct violation of his instructions.

TORT for personal injuries incurred while in the employ of the defendant in the manner stated in the opinion. Writ dated June 5, 1905.

At the trial in the Superior Court *Dana*, J., ruled that the plaintiff had not made out a case, and ordered a verdict for the defendant, the plaintiff excepting to the ruling. The judge reported the case for determination by this court. If his ruling was right judgment was to be entered on the verdict for the defendant; if not, the case was to stand for trial in the Superior Court.

*H. A. Dubuque*, for the plaintiff.

*R. P. Borden*, (*P. E. Tripp* with him,) for the defendant.

SHELDON, J. The plaintiff testified in substance that he was told by Moran, the second hand, to get a ladder and a piece of string and tie a belt which had come off the pulleys and was lying on the shafting; that Moran placed the ladder against the driving shaft and went away while the plaintiff was getting the string; that the plaintiff on his return went up the ladder, the shaft being still in motion, until he was within two or three steps from the top, picked up the bottom of the belt, reaching over the shaft to do so, and got hold of the top to tie it, when the bottom of the belt at once lapped or doubled around the revolving shaft, and his arm was drawn in between the belt and the shaft and torn off at the elbow. He said that he had had no experience about tying belts, never had seen them tied, and knew nothing of the danger involved in attempting to tie them; that when he had been appointed third hand about a week before the accident, he told the defendant's overseer that he knew

nothing about that work, but that the overseer told him to take it, saying " We will push you through," meaning that the overseer and Moran would teach him how to fix speeders and put on belts. He testified also that Moran had called his attention to the method of repairing speeders and to the danger in putting on belts, but never had spoken to him about the danger of tying belts or the way to tie them ; that Moran gave him no instructions or warning on this occasion, and that he asked for none because he relied on Moran and supposed there was no danger. He contends that the risk of the accident which happened to him was not an obvious one, that in fact he knew nothing of it, and that he should have been told of the proper method of tying the belt and warned of the danger which would exist if any other than the proper method was adopted. But on cross-examination it appeared that he was well aware of the danger of going near a moving shaft, that anything near it would be caught and drawn in and wound around it by the belt, and that this was one of the things to which Moran had referred when he warned the plaintiff of the danger in putting on belts ; and he finally admitted, though apparently with reluctance, that the overseer had told him, at the time of appointing him to be third hand, if there was anything wrong and he did not know anything about it to go and tell the second hand, who would fix it for him or show him ; and that when he undertook to tie this belt he did not know where to tie it, but did know that the overseer had told him to ask Moran if there was anything he did not know about, and that he did not ask Moran on this occasion because he thought that if there was any danger Moran would tell him. It also appeared on the cross-examination of an expert called by the plaintiff that there would have been no danger in tying the belt by first attaching the top of the belt to the ceiling or by stopping before getting to the top of the ladder, reaching under the shaft, and taking hold of both parts of the belt and pulling them out so as to tie the string around them.

On this state of facts it is impossible to say that the plaintiff was in the exercise of proper care in doing as he did. He understood and appreciated the danger of getting caught between the belt and the shaft ; although he did not perhaps fully appreciate the peculiar risks of getting so caught in attempting to tie the

belt while the shaft was in motion, he yet understood fully the general danger, and he was ignorant and was aware that he was ignorant of the right method to be adopted. He had been expressly instructed under such circumstances to go to the second hand for information. Instead of following this instruction he chose to take it for granted that he needed no advice but could safely go about the work in his own way, on the ground that though his instructions were to apply for information, Moran would have volunteered it if it had been needed. Apparently he availed himself of Moran's temporary absence to act upon his own initiative, in direct violation of the instructions which he had received. Under such circumstances he cannot hold his employer for the injury which has resulted; and it is unnecessary to consider whether there were any such peculiar dangers attending the job of tying this belt as, if these instructions had not been given to the plaintiff, would have made it the duty of the defendant to see that special instructions and warnings should be given to him. *Lennon* v. *Goodrich*, 192 Mass. 293, 294. *Daniels* v. *New England Cotton Yarn Co.* 188 Mass. 260. *Brundige* v. *Dodge Manuf. Co.* 183 Mass. 100. *Gaudet* v. *Stansfield*, 182 Mass. 451. *Silvia* v. *Sagamore Manuf. Co.* 177 Mass. 476. *Stuart* v. *West End Street Railway*, 163 Mass. 391, 393. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, 160.

*Judgment for the defendant.*