CASE 7.—ACTION BY EDNA MAY PITTS AGAINST THE NELSON-BETHEL CLOTHING COMPANY FOR DAMAGES FOR PERSONAL INJURIES.—December 18.

# Nelson-Bethel Clothing Co. v. Pitts

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

Thos. R. Gordon, Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1. Master and Servant—Injuries to Servant—Dangerous Instrumentalities—Sewing Machine Belt.—An ordinary sewing machine belt consisting of several parts fastened with hooks is not a dangerous instrumentality, the use of which by the master will render him liable for injuries to a servant.
2. Accidental or Improbable Injury.—A manufacturing company operating a number of ordinary sewing machines, the belts of which were passed over a wheel on a revolving shaft, was not bound to anticipate that an operator of a machine would get her hair caught in the shaft while stooping down to connect the belt of her machine with the shaft.
3. Contributory Negligence—Assurance by Master.—An assurance by a master that a machine is not dangerous does not relieve the servant of the duty of exercising care to avoid known and obvious dangers.
4. Same.—An assurance by a master to an operator of a sewing machine that a belt connecting the machine with the revolving shaft was not dangerous because the parts thereof were fastened with hooks did not render the master liable for injury to the operator by getting her hair caught in·the shafting while connecting the belt on her machine with the shaft; it appearing that she did not rely on such assurance.

FRED FORCHT, JR., for apppellant.

vol. 131—3

Nelson-Bethel Clothing Co. v. Pitts.

J. T. O'NEAL of counsel.

### POINTS AND AUTHORITIES.

1. The rule as to assurance of safety is subject to the rule as to proximate cause. The particular danger or defect as to which the assurance is given must be the pproximate cause of the injury. (Shemwell v. O. & N. R. R. Co., 117 Ky. 556; Burlington R. R. Co. v. Liebe, 17 Cal. 280; International, &c., Ry., v. Turner, 3 Tex. 487; Showalter v. Fairbanks, 88 Wis. 376; Hilje v. Hettich, 95 Tex. 321; Illinois Steel Co. v. Mann, 197 Ill. 186, vol. 1 Labatt on Master and Servant 1184; Lowcock v. Franklin Paper Co., 169 Mass. 313.)

2. The rule of assumption of risk, should have been applied in this case, and a peremptory instruction should have been granted by the court in favor of appellant. (Vol. 1 Labatt on Master and Servant, p. 589; Wilson v. Chess & Wymond Co., 117 Ky. 567; Kelly v. Barber Asphalt Co., 93 Ky. 363; McCormick Harvesting Machine Co. v. Liter, 23 Ky. Law Rep. 2154; Mellott v. L. & N., R. R. Co., 101 Ky. 212; McGhee v. Bell, 19 Ky. Law Rep. 267; Duncan v. Gernert Lumbert Co., 25 Ky. Law Rep. 1039; Anderson v. Akeley Lumber Co., 47 Minn. 556; Hayden v. Smithfield Mfg. Co., 29 Conn. 548; Jones v. M. & I. Co., 92 Mo. 565; Rooney v. S. & D. Cordage Co., 161 Mass. 153; Goodes v. B. & A. R. R. Co., 162 Mass. 288; Daniels v. New England Cotton Yarn Co., 74 N. E. Rep. 332; Reis v. Struck & Bro., 23 Ky. Law Rep. 1113; Lindsay v. Hollenbach & May Contract Co., 29 Ky. Law Rep. 70.)

EDWARDS, OGDEN & PEAKE for appellee.

RAY BIZOT of counsel.

The following facts were well established by the testimony:

1. The belt had been patched seven or eight times by Miss Pitts on the morning she was injured.

2. Her hair was caught by one of the hooks in the belt and drawn around the cylinder.

3. Her hair was properly coiled and done up on the back of her neck.

4. She was without experience in mending belts and placing them on the wheel, and upon complaint by her was assured by the defendant's agent in charge that it was safe for her to do that work.

AUTHORITIES CITED.

Mer. Ice & Cold Stor. Co. v. Barghold, 33 Ky. Law Rep. 492; R. R. Co. v. Wallace, 101 Ky. 637; Henderson Trust Co. v. Stewart, 108 Ky. 171; Lasch, &c., v. Stratton, &c. 101 Ky. 672; L. & N. R. R. Co. v. Foley, 15 Ky. Law Rep 17; L. & N. R. R. Co. v. Schivells, 14 Ky. Law Rep. 903; Quaid v. Cornwall, 13 Bush 601; I. C. R. R. Co. v. Langan, 25 Ky. Law Rep. 500; Cumb. Tel. & Tel. Co. v. Harp, 28 Ky. Law Rep. 909; Same v. Metzer, 29 Ky. Law Rep. 1024; Thompson on Negligence, vol. 4, sec. 4664.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Nelson-Bethel Clothing Company is a manufacturer of pants in Louisville. Edna May Pitts was in its service as the operator of a sewing machine. There were some 40 or 50 sewing machines in two rows, the ordinary Singer sewing machines, except that, instead of being operated by a pedal, the belt was passed over a wheel setting upon a shaft which ran under all of the sewing machines, and was turned by an electric motor. The belts operating the sewing machines were the usual sewing machine belts consisting of a round leather thong fastened together by a hook or hooks. Miss Pitts had been in the business of operating such machines something over five years, having worked in a number of similar establishments in the city of Louisville, and was regarded as a skilled hand. She had worked at this particular machine for two months, when she was hurt on August 3, 1905. The machine table was 31 inches high. The drive wheel on the shaft was 11 inches in diameter. The wheel directly under the machine was 5 inches in diameter and the distance between the wheel on the shaft and the wheel under the machine was 14 inches. The shaft was 1⅜ inches in diameter. About two

weeks before she had had trouble with her belt and had gone with it to the forelady, who had sent her to Pat Begley, whose business it was to fix the belts. She asked him for a new belt, and he refused to give it to her, but, instead, gave her a piece of belt about 1½ feet long, and took out the worst part of her belt, telling her that her belt was all right, it was safe, and would not break any more. The belt then consisted of three pieces put together with hooks. She used the belt without any further trouble for two weeks, when one morning it began to break again, and it then broke seven times. When a belt would break, they would get hooks from Begley and fasten it together, and put it on themselves. Her statement, as to what took place at this point is as follows: ''I took the belt back, and told Pat I could do nothing with this belt, it was rotten, and he took it out of my hands, and he said: 'You are crazy, girl. That belt is all right.' It was split in places, and he gave me three hooks, and he told me to go back and fix my belt. Well, I says: 'Pat, suppose you put this belt on yourself.' He says: 'No, I won't. He said: 'I am not getting paid for putting on belts. I am getting paid for pressing.' Q. What time was that? A. The day I received my injury. Q. What were you doing at the time you were injured? A. I was throwing my belt on. We had to take a little string in our hands, and put it on the belt, you know, and hold the two ends in your fingers, and then get under there, all in a kneeling position, and you had to put your head and all under, and then you had to take that belt and throw it on like that, and just as I throwed it on I got caught. I had to get right down under, and the shaft would go around and touch your skirt, and, of course, the wheel come out that way, and you had to get pretty close to snap your belt on,

because you were all crouched up under there. You had no way to move. You would have to hold your left hand somewhere while you were throwing on with the right hand like that. I never did think there was danger in such a thing when I was told there was not. Q. Who told you there was not? A. Pat Begley. Q. Would you tell the jury whether Pat Begley or any one representing the company explained to you how to put the belt on and the danger incident to the work? A. No, sir; no one had ever told me. Q. What inspection if any, was made by any one representing this company of your belt? A. None." On cross-examination, she testified as follows: "Q. Now Miss Pitts, you understood perfectly well how to operate the machine, did you not? A. The machinery, the sewing part; yes, sir. Q. That was very simple? A. Not the belt. Q. That was very simple? A The sewing, put the work under the foot of the machine was simple to do, but not to fix the belt. Q. You knew there was a revolving shaft under there, didn't you? A. I did. Q. You knew there was a little pulley that operated your machine, and, when, it was off of that pulley, your machine would stop, and the roller would go on? A. Yes, sir. Q. You knew that the way to start your machine was to put this belt over this larger pulley, didn't you? A. Yes, sir. Q. Was there anything about the machine that you did not know? A. I had no experience in•putting on belts. I did not know it was dangerous at all. I relied on them telling me it was safe. Q. Relied on who? A. Pat Begley said I could not get hurt when I told him to put it on. Q. And with your right hand you were putting on this belt? A. I was. Q. Don't you know that your hair was caught down on the shaft at least 12 or 15 inches—A. No, sir; the belt took my hair just as I put it on. One of the

hooks or something skinned the side of my head, and took me. Q. The belt did? Well, your hair was not caught on the shaft according to your recollection? A. I don't know.'' When her hair was thus caught, it was wrapt around the shaft, and her whole scalp was torn from her head before the machinery could be stopped. Everything was torn off from the nape of the neck down to the bone, about one-half of the eyebrow being torn off, and the right ear was pulled about an inch out of the head. There was a terrible hemorrhage from the wound, and there was also a fracture of the spine. She brought suit to recover for her injuries, and, a verdict and judgment having been entered in her favor for the sum of $8,129.16, the defendant appeals.

The ground upon which the recovery was had was that the belt of the machine was not reasonably safe for use; that its defective and unsafe condition was known to the defendant, and unknown to her; and that she was assured that the belt was reasonably safe, and suitable for use, and used it not realizing that its condition was dangerous, relying upon the statements of Begley, the dangerous condition of the belt not being so manifest that a person of ordinary prudence would not have used it. At the other places where she had worked similar to this it was customary for a man to put on the belts for the girls, but at this place the girls always put on their own belts, and she had put her belt on often before, and had put it on seven times that morning before the time that she was hurt. The belts when new were put together with hooks, and, when they would break, would be repaired with hooks. Begley furnished the hooks to the girls, and they put them on. When he furnished Miss Pitts that morning three hooks, she borrowed some pincers from a girl

near her, and put the belt together with the hooks just before she attempted to put it on when she was hurt. The belt at this time differed from an ordinary sewing machine belt only, in this: That it consisted of more pieces and had more hooks in it than a belt usually has, and she had put the hooks in herself. Begley said that he offered to put the belt on for her, and she declined his assistance. She denied this, and said he declined to put it on for her. The proof for the defendant was to the effect that her hair was not put up; that a short time before the forelady had called her attention to her hair being down, and directed her to tie it up, and she had agreed to do so, but had not in fact done it; and that this was the cause of her hair being caught. The belt was on the machine when the machinery was stopped, and was all right, and her hair was found wound around the shaft. It is insisted for the defendant that the court should have instructed the jury peremptorily to find for it, because the assurance of Begley that the belt was all right had reference to the sufficiency of the belt for running the machine, and not to any danger of her getting her hair caught in it; that she knew of the danger of her hair being caught as well as Begley, and, being an experienced operator, she understood the situation as well as he did, and no warning or caution of danger was required. The proof for the plaintiff was that she was working by the piece, and that, when the belt would break, she would lose the time taken in repairing it. She had lost a good deal of time that morning by reason of having to put the belt on seven times. It was for this reason that she took the belt to Pat Begley, and insisted on his giving her a new belt, telling him that it was rotten. When he said to her that the belt was all right, he simply meant that the belt was

not rotten, and would do if put together, and so he gave her three hooks and told her to go back and fix her belt. Evidently what he thought was that the belt had not been hooked together right. She took the hooks, put the belt together herself, and in attempting to put it on the machine her hair was caught, and she received a frightful injury. But, although she was terribly injured, the master is not responsible to her in damages unless at fault, and by reason of his fault she was hurt. She had operated sewing machines for years, and knew as much about the belts as Pat Begley did. All belts for sewing machines are put together with hooks, and whether they have two or more hooks does not render the sewing machine belt a dangerous instrumentality. She had often put this belt on. She undersood that it was a part of her duty, and that she was hurt in putting it on, was an accident which none of the parties anticipated, or had any reason to anticipate.

In 4 Thompson on Negligence section 4667, the rule is thus stated: "Such a promise on the part of the master does not, of course, relieve the servant of continuing to exercise reasonable care for his own safety; nor will the promise, when it has no relation to the danger which the servant in fact incurs, be available to lay the foundation of an action against the master." This principle was recognized by this court in Shemwell v. O. & N. R. R. Co., 117 Ky. 556, 78 S. W. 448, 25 Ky. L. R. 1671, where the keeper of a pumping station complained that the roof was defective, and the master promised to repair it. A few days afterwards the roof took fire, and Shemwell went upon it to put out the fire. The roof fell and he was injured. The court in refusing a recovery said: "In the instant case appellant, as has been suggested, probably notified his su-

perior of the defects in the roof only as affecting its purpose as a roof. If the appellant had been injured by the roof falling in upon him (and that danger had not been a patent one), or by reason of its leaky condition, he would have been protected against the damages. But it is not shown or claimed that he notified his superior that the roof was so rotten as to be unsafe to get upon, and therefore there was no promise or understanding by the superintendent to repair such a defect, or to take the consequences upon the employer meantime. The promise to repair, and the assumption of consequences during repairs for a reasonable time, necessarily are referred to the particular defects which the parties were discussing." In Kelley v. Barber Asphalt Co., 93 Ky. 363, 20 S. W. 271, 14 Ky. Law Rep. 350, Kelley was bending over a revolving shaft in order to draw up buckets, and in doing this his shirt was caught by the revolving shaft, and he was painfully injured. It was held that he could not recover upon the ground that he was bound to know that, if his clothes were caught by the revolving shaft, he would get hurt, and that it was incumbent on him to keep out of the way of it. The same rule applied in Daniels v. New England Cotton & Yarn Co., 188 Mass. 260, 74 N. E. 332, where a girl, as here, had her scalp torn off by a braid of her hair becoming caught around a roller of a machine at which she was working. See, also, McCormick Harvesting Company v. Liter, 66 S. W. 761, 23 Ky. Law Rep. 2154. The only thing in this case to distinguish it from those cited is the testimony of the plaintiff as to what Pat Begley said to her. It is true that, after telling just what did take place between her and Begley, she says that she thought there was no danger in such a thing when Pat Begley told her there was not,

and also says that Pat Begley said to her that she could not get hurt when she told him to put it on. But she knew as well as Begley that, if her hair got caught, she would get hurt. Neither she nor Begley had in mind her getting her hair caught. She had often put that belt on before. She had put it on seven times that morning, and she understood the whole matter as well as anybody. No rule is better settled than that the servant can not recover on account of an assurance of the master when he understood the risk as well as the master, and, in fact, did not rely upon the superior knowledge of the person making the assurance. The thing that was under discussion between her and Begley was the sufficiency of the belt to run the sewing machine. Neither of them at any time had in mind that the belt itself was a source of danger.

Under all the evidence, the court should have instructed the jury peremptorily to find for the defendant.

Judgment reversed, and cause remanded for further proceedings consistent herewith.