### JERRY PECOTT'S CASE.

Suffolk.    March 23, 1916. — April 11, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act;* Medical and surgical attendance. *Physicians and Surgeons.*

Under the provision of the workmen's compensation act contained in St. 1911, c. 751, Part II, § 5, as amended by St. 1914, c. 708, § 1, that "Where, in a case of emergency or for other justifiable cause, a physician other than the one provided

by the association is called in to treat the injured employee, the reasonable cost of his services shall be paid by the association, subject to the approval of the Industrial Accident Board," that board has no right to approve the bill of an outside physician, where the employee was injured shortly before the closing at noon on a Saturday of the mill in which he worked, on that afternoon felt intense pain and consulted an outside physician, who advised an operation, and on the following Wednesday was operated upon for hernia by the outside physician, there being nothing to indicate that, when the operation was performed on the fourth day after the accident, there was any emergency or any other justifiable cause for the operation not being performed by one of the physicians provided by the insurer, of whose names the employee had been notified by notices posted in the mill where he worked.

An employee's ignorance of his rights and obligations under the workmen's compensation act does not excuse him from compliance with its requirements. Following *McLean's Case, ante*, 342.

APPEAL to the Superior Court from a decision of the Industrial Accident Board approving a bill of Dr. Francis A. Cregg for the sum of $50 to be paid by the insurer for performing an operation for hernia on the employee Jerry Pecott on November 4, 1914, Dr. Cregg being the family physician of Pecott and not one of the two physicians provided by the insurer.

The case was heard by *McLaughlin*, J. The facts found by the Industrial Accident Board are stated in the opinion. The judge made a decree affirming the decision of the Industrial Accident Board and ordering the insurer to pay Dr. Cregg "$50, said sum being a reasonable fee for the services performed under the statute." The insurer appealed.

The case was submitted on briefs.

*E. C. Stone*, for the insurer.

*M. A. Cregg & H. A. Cregg*, for the employee.

CARROLL, J. The employee was injured Saturday, October 31, 1914, between half past eleven and twelve o'clock. As usual on Saturday, the mill closed at noon. In the afternoon, the pain from the injury became intense and he consulted Dr. Cregg, who advised an operation. Monday the employee made an attempt to notify his foreman of the injury, and, failing in this, he left word by telephone with one of the office employees. Wednesday, November, 4, 1914, he was operated on for hernia.

At the time the employee was injured there were posted in the mill where he worked printed notices informing employees that in case of injury Dr. Carl R. Moeckel or Dr. Howard L. Cushman

was to be called and that "bills of other physicians will not be paid by the insurance company." No attempt was made to notify these physicians of the injury, the employee making no effort to secure their services. Dr. Cregg performed the operation. It is agreed his charge is reasonable. The question is whether under these circumstances the company is required by the workmen's compensation act to pay for the services of a physician not furnished by it, but selected by the employee.

Under the workmen's compensation act, the reasonable medical services required during the first two weeks after the injury are to be furnished by the insurer, the duty of supplying medical aid being imposed upon the insurance company with the obligation of paying therefor. The right to select the attending physician is given to it by the statute. It is evident, we think, that the Legislature in passing this act did not intend to give to the employee the privilege or right of selecting his own physician at the expense of the insurer. Under the amendment of 1914,* where a physician other than the one provided is called in case of an emergency, or for other justifiable cause, the insurer is required to pay for this service, if in the opinion of the Industrial Accident Board the charge is reasonable and the cause of employment justifiable. The purpose of the Legislature in passing this amendment was not to deprive the insurer of the right to select its own physicians. By this change in the law provision was made for the case of emergency, where there was imminent danger, where the suffering and pain were severe, where immediate attention was required and the services of the insurance physician could not be obtained in time to give relief. The amendment also was intended to apply to a

---

* St. 1911, c. 751, Part II, § 5, as amended by St. 1914, c. 708, § 1, is as follows: "During the first two weeks after the injury, and, if the employee is not immediately incapacitated thereby from earning full wages, then from the time of such incapacity, and in unusual cases, in the discretion of the board, for a longer period, the association shall furnish reasonable medical and hospital services, and medicines, when they are needed. Where, in a case of emergency or for other justifiable cause, a physician other than the one provided by the association is called in to treat the injured employee, the reasonable cost of his services shall be paid by the association, subject to the approval of the Industrial Accident Board. Such approval shall be granted only if the board finds that there was such justifiable cause and that the charge for the services is reasonable."

situation where there was no actual emergency, but where the employee, acting as a reasonable man, would be justified in refusing the care of the physician selected by the company. There is nothing in the record of this case to show such an emergency or any cause which would justify a reasonable man in neglecting to seek the attention of the physicians named.

Even if on Saturday afternoon, when the pain was intense, an emergency then existed which made it prudent to call Dr. Cregg, and he could respond more quickly than the physician of the company, and the employee was justified in sending for him, (which we are not called upon to decide,) there is nothing in the evidence which discloses any such emergency existing on the Wednesday following when the services were rendered, and nothing is shown which would justify the employee in failing to secure the services of the physicians offered by the insurer.

In *Panasuk's Case*, 217 Mass. 589, it was held that the employee, an "illiterate foreigner who is unable to read, write or understand the English language," was not bound by a notice printed in English. In the case at bar the employee could read and speak English; notices were conspicuously posted; we think he was charged with knowledge of them and their contents and there is no evidence which justified him under the statute in neglecting to secure the services of either of the physicians named. *Daniels* v. *New England Cotton Yarn Co.* 188 Mass. 260.

His ignorance of his rights and obligations under the workmen's compensation act cannot excuse him from compliance with its terms. *McLean's Case, ante*, 342.

*Decree reversed.*