Wilson, J.
This is an action of tort in which the plaintiff seeks to be compensated for injuries sustained as the result of a can of beans negligently placed in the oven of a stove in the premises of the defendant by an employee of the “A & S Luncheonette.” The answer was a general denial and set up contributory negligence.
There was evidence tending to show that the defendant conducted a store in the Dorchester District of Boston; that a luncheonette was operated in said store by the “A & 8 Luncheonette”; that there was no dividing wall between the luncheonette and the rest of the store; that the entire store, including the luncheonette, was in one general color scheme, with no sign or signs over the luncheonette stating that it was operated by the “A & S Luncheonette” or that it was not being operated by the defendant; that an ordinary customer could not see any difference between the defendant’s store and the luncheonette; that permanent menu cards were kept at the luncheonette with the printing in large letters, “McLellan Luncheonette,” on each; that there was nothing on the uniforms of the employees, working at the luncheonette, which stated that the luncheonette was being operated by the “A & S Luncheonette” rather than by the defendant.
The evidence also tended to show that the defendant did not operate the luncheonette, bought no food used or sold there, and received 12% of the gross sales, plus gas and light bills; that the manager and all others working in the luncheonette were employees and were paid by the “A & S Luncheonette”; that some provisions purchased for it were billed to “McLellan’s Luncheonette”; that health and common victualler licenses were issued by the public authorities to “A & S Luncheonette,” were small in size and on display on the wall at one end of the luncheonette.
*425 The plaintiff seasonably filed seven requests for rulings. The trial court gave the first and seventh and refused all others.
The plaintiff now claims the refusal of the fourth, fifth and sixth requests was error prejudicial to her rights. Said requests were as follows:
“4. If the defendant expressly or impliedly represented to the plaintiff that it was conducting a restaurant or luncheonette in its store, and if the plaintiff had no knowledge that the luncheonette was conducted by anyone other than the defendant, the defendant is responsible to the plaintiff for the acts of the person or persons conducting the luncheonette.
“5. Where the plaintiff purchased food from the ostensible agent of the defendant and sat at the counter of the luncheonette that was ostensibly conducted by the defendant, the defendant is responsible to the plaintiff for any negligence in the management and control of the luncheonette.
“6. On all the evidence the plaintiff is entitled to recover due to the negligence of the defendant in not punching a hole in the can of beans before putting the same in the stove.”
The trial judge dealt with the fourth and fifth requests by saying, ‘‘Denied (I do not find this as a fact),” and as to the sixth said, “Denied (see finding of fact).”
The court found for the defendant and made the following special findings of fact:
“I find as a fact that the defendant operated a store for the sale of general merchandise; that in this store there is a Luncheonette Department which was operated at the time of the injury to the plaintiff by the A & S Luncheonette; that the defendant received twelve per cent of the gross sales from the operators of the luncheon department, plus the gas and light bill; that the luncheon department was operated independently by the A & S Luncheonette, and the defendants, agents, or servants had no control over the operation of the same. I find as a fact that the manager of the *426 luncheonette was negligent and that the plaintiff received injuries as a result of such negligence. I further find that the defendant had no control over the manager of the luncheonette.”
The plaintiff’s fourth and fifth requests were intended to call the attention of the trial judge to the question of whether or not the manner in which the defendant permitted the luncheonette to be conducted upon the premises was such that the ordinary person dealing with the “Luncheonette” might well believe he was dealing with the defendant.
In the recent case of Timmins v. F. N. Joslin Co., Mass. Adv. Sh. (1939) 1281, 1282, where the defendant permitted another to operate a bakery department in its store, at which the plaintiff purchased bread containing a foreign substance, the court said:
“There was evidence that the defendant had held itself out as the proprietor of that department, and that the plaintiff might reasonably consider that she was buying bread from the defendant. ‘Knowingly to lead a person reasonably to suppose that you offer and to offer are the same thing.’ ” See cases there cited.
See also Hannon v. Siegel-Cooper Company, 167 New York 244. There the reason for the rule was stated as follows :
“If A contracts with the ostensible agent of B for the purchase of goods, he relies not only on the business reputation of B ,as to the goods he manufactures or sells, but on the pecuniary responsibility of B to answer for any default in carrying out the contract.”
The rule was also stated by the Supreme Judicial Court of this' Commonwealth in Stiff v. Ashton, 155 Mass. 130, 133, and reaffirmed in Raldne Realty Corp. v. Brooks, 281 Mass. 233, 238, as follows:
*427 “The more modern statement, that one is responsible for the word or act which he knows, or ought to know, will be acted upon by another, includes the older statement that the estoppel comes from an intention to mislead. It also includes words or conduct not consistent with honesty and fair dealing and intended to induce action by the plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects.”
Whether the defendant in the instant case was liable to the plaintiff seems to us to rest upon the question of whether by conduct it was estopped to deny it was conducting the “Luncheonette.”
Whether equitable estoppel has been established is a question of fact, where it is possible to draw more than one inference from the evidence. Boston and Albany Railroad v. Reardon, 226 Mass. 286, 291. Calkins v. Wire Hardware Co., 267 Mass. 52, 67. Taylor v. Jones, 242 Mass. 210, 216. Levin v. Rose, Mass. Adv. Sh. (1939) 325, 328. Sutcliffe v. Bemis, Mass. Adv. Sh. (1936) 807, 813.
In McLearn v. Hill, 276 Mass. 519, 524, the court, speaking through Rugg, C. J., said:
“The offer of proof does not charge deceit, bad faith or actual fraud. Facts falling short of these elements may constitute conduct contrary to general principles of fair dealing and to the good conscience which ought to actuate individuals and which it is the design of courts to enforce.”
And at page 527, it was said:
“Words and conduct free from intentional purpose to deceive may constitute fraud under appropriate conditions. (Cases cited.) Proof of fraud in its strict sense is not essential to estoppel. The more modern statement is that ‘one is responsible for the word or act which he knows, or ought to know, will be acted upon by another.’ Stiff v. Ashton, 155 Mass. 130, 133. While that statement includes fraud arising from an *428 intention to mislead, it also includes words or conduct not consonant with fairness and designed to induce action by the plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects.”
The trial judge in the instant case dealt with said rulings by saying, “Denied (I do not find this as a fact).” If that disposition is a finding of fact and the evidence is such that it is susceptible of more than one inference, it is not open to review by this Division. Findings of fact will not be reversed unless plainly wrong. Ashley v. Collins, 292 Mass. 67, 70. Graustein, v. H. P. Hood & Sons Co., Mass. Adv. Sh. (1936) 319, 327. Worcester v. L. Rocheford & Son, Inc., Mass Adv. Sh. (1938) 827, 829, and cases cited.
The trial court made specific findings of fact hereinbefore set out. None of them constitutes a finding which can be construed as a finding that there was nothing in the conduct of the defendant which could fairly lead the plaintiff to believe she was dealing with the defendant.
Regarding such a disposition of requests for rulings, it was said in Orcutt v. Sigouin, Mass. Adv. Sh. (1939) 1205, 1206:
“The practice of a judge who has denied requests for rulings on the ground that they are inapplicable to the facts which he has found, without making it clear what facts he did find, has frequently been condemned.”
Commonwealth v. Hull, Mass. Ad. Sh. (1937) 15, 23. Mericantante v. Boston and Maine Railroad, 291 Mass. 261, 263. Freeman v. Crowell & Thurlow, Inc., Mass. Adv. Sh. (1937) 307, 313. See Masmanian v. Kuken, 285 Mass. 516, 518.
There was ample uncontradicted evidence that the “Luncheonette” was not to be distinguished from the remainder of the store in general color, that no signs were *429 exhibited indicating that others than the defendant were conducting it, the menu cards contained the name of the defendant. The only evidence which would in any way indicate that the defendant was not conducting the “Luncheonette” was the existence of the small licenses which were on display on the wall at one end of the “Luncheonette.” It nowhere appears that these licenses were seen by the plaintiff. In order to charge,the plaintiff with implied notice of their contents, they should have been conspicuously displayed. Renaud v. New York, New Haven and Hartford Railroad, 210 Mass. 553, 557. Widen v. Warren Hotel Co., 262 Mass. 41, 44. Pecott’s Case, 223 Mass. 546, 549. Daniels v. New England Cotton Yarn Co., 188 Mass. 260, 263. Panasuk’s Case, 217 Mass. 589.
From the report taken as a whole, it seems clear to us that the trial judge did not consider the legal question raised by said requests. This was error prejudicial to the plaintiff. The finding for the defendant is set aside and a new trial ordered.