RALDNE REALTY CORPORATION *vs.* SHIRLEY F. BROOKS.

Suffolk.    October 3, 1932. — December 6, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Sale.   Conversion.   Mortgage,* Of personal property.   *Estoppel.*

At the trial of an action of tort for conversion of certain machinery, there was evidence that the machinery had been owned by the defendant and was used by a corporation as a tenant at will in a factory in a building of the defendant; that the defendant agreed in writing to give a clear title to it to the corporation on payment of $600 in cash and two notes for $100 each payable in sixty and ninety days respectively; that the defendant later learned that the corporation was seeking a loan from the plaintiff and informed officers of the corporation that they might negotiate the loan, giving to the plaintiff a mortgage upon the machinery; ·that such officers, in applying for the loan, showed the plaintiff documents relating to the agreement of sale with the defendant; that the plaintiff by telephone repeated to the defendant what he had been told by the officers of the corporation and asked him if such statements were true; that the defendant replied in the affirmative; that, all parties proceeding on the understanding that the defendant had authorized the corporation's officers to execute and deliver a mortgage on the property to secure the loan by the plaintiff upon condition that the plaintiff should hold for the defendant the sum of $600, the loan was made, the mortgage was given, and the sum of $600 was retained by the plaintiff for the defendant; that thereafter the plaintiff repeatedly offered to deliver the $600 to the defendant and the defendant repeatedly delayed going to the plaintiff therefor, but stated that he would give a bill of sale of the machinery, until finally, following a demand by the plaintiff after a default by the corporation under the mortgage, the defendant refused to consummate the transaction; that the plaintiff made a tender of the $600 to the defendant; and that the defendant refused to permit the plaintiff to remove the machinery. A verdict was ordered for the defendant. *Held,* that

(1) No writing was required as evidence of the sale, because the property was already in the possession of the buyer;

(2) There was evidence which warranted a finding that there was a completed sale of the property by the defendant to the corporation and that the plaintiff made the loan and took the mortgage as security with full knowledge and consent on the part of the defendant;

(3) If such finding was made, the defendant, by reason of his agreements that he would make the sale if the plaintiff should make the loan and reserve the $600 for him, was estopped to deny the plaintiff's right to the possession of the property;

(4) It was error to order a verdict for the defendant.

TORT for conversion of machinery. Writ in the Municipal Court of the City of Boston dated August 13, 1929.

On removal to the Superior Court, the action was tried before *Hall,* C.J. Material evidence is stated in the opinion. The Chief Justice ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. C. Johnston,* (*V. C. Stoneman* with him,) for the plaintiff.

*E. O'H. Mullowney,* for the defendant.

CROSBY, J. This is an action of tort for the conversion of certain personal property.

The plaintiff offered evidence from which the following facts could have been found: The defendant was the owner of certain real estate which was occupied by the Unique Furniture Company (hereafter referred to as the company) as a tenant at will. The company manufactured household furnishings and furniture. The premises were equipped with certain machinery, used by the company as a tenant at will and owned by the defendant, which is the property alleged to have been converted. The defendant entered into a contract with the company for the sale of this property dated January 1, 1928.

The plaintiff offered evidence tending to show that the company did not pay the defendant $3,500 on account of the agreed purchase price of $5,000. On January 31, 1929, the defendant delivered to an officer of the company an unsigned document wherein it was provided that the defendant should give to the company a clear title to the property alleged to have been converted on payment of $600 in cash and two notes of $100 each to become payable in sixty and ninety days respectively. Shortly thereafter the defendant learned that the officers of the company had applied to the plaintiff for a loan of $1,500 on the property. The defendant later informed two officers of the company that they might negoti-

ate the loan giving to the plaintiff a mortgage upon the property. A short time before February 4, 1929, these officers, on behalf of the company, applied to the plaintiff for a loan of $1,500. They showed the plaintiff's representative the agreements above referred to and reported to him that the defendant had agreed to execute a bill of sale of the property on receipt of $600. Thereupon the plaintiff's representative, by telephone, repeated to the defendant what he had been told by the officers of the company and asked him if the same were true; the defendant replied in the affirmative. At this conversation the plaintiff's representative stated that it appeared that the property was worth $5,000, and he asked the defendant if it was worth $2,500, to which the defendant replied that it was. There was further evidence from which it could have been found that on or about February 4, 1929, in accordance with the foregoing understanding, and with full knowledge of the defendant, the officers of the company borrowed from the plaintiff the sum of $1,500 securing the same by a mortgage of the personal property executed to the plaintiff. At the time the loan was negotiated, the officers of the company again informed the plaintiff that the defendant was the actual owner of the property, that he had agreed to sell it to the company, and that he had authorized them to execute and deliver a mortgage on the property to secure the loan, upon condition that the plaintiff should hold for the defendant the sum of $600. The plaintiff's representative again telephoned the defendant, told him of the representations made by the officers of the company, and the defendant stated that the representations were true and that he would deliver to the plaintiff a bill of sale of the property to the company within a day or two, upon condition that the plaintiff should reserve for him a check for $600. In accordance with this understanding the plaintiff made two checks to the company covering the amount of the loan — one for $600, and the other for the balance of the loan. The check for $600 was indorsed by the company and was retained by the plaintiff, and the other was delivered to the officers of the company. Immediately thereafter the plaintiff's agent notified the defendant that

the plaintiff was holding the check for $600, and the defendant agreed to come to the plaintiff's office within a day or two and get it and deliver to the plaintiff the bill of sale in accordance with the terms of the agreement. A few days later the plaintiff's agent again notified the defendant to call and get the check, and the defendant replied that he would do so in a short time. At frequent intervals within the following four months the plaintiff notified the defendant, who agreed in each instance to get the check and deliver the bill of sale. On or about April 4, 1929, there was a default in the conditions of the mortgage and at the expiration of about four months from the date of the original loan the plaintiff made demand upon the defendant that he deliver a bill of sale in accordance with his agreement, and accept the check which was held for him. The defendant then for the first time refused to consummate the transaction, and informed the plaintiff that the company was indebted to him in a substantial amount for rent and that the only condition upon which he would deliver the bill of sale was that the rent due him should be paid. There was evidence that from the date of the original loan to the date of the trial of this action there were sufficient funds standing to the credit of the plaintiff in the bank on which the check was drawn to pay it had it been presented. Thereafter the plaintiff's agent went to the defendant's premises for the purpose of taking possession of said personal property and was ejected by an agent of the defendant acting upon the defendant's instructions. There was also evidence tending to show that the plaintiff's agent on or about May 15, 1929, tendered to the defendant the check; it was rejected and the defendant again refused to allow the plaintiff's agent to take possession of the property. At the close of the plaintiff's case the trial judge directed the jury to return a verdict for the defendant; to this order the plaintiff duly excepted.

The defendant offered no evidence and does not argue that the plaintiff's evidence is not sufficient to establish all the facts to which it relates, but contends that his promise that he would execute a bill of sale and convey title to the property on receipt of $600 does not estop him from asserting his title — such promise was merely a representation of

a "present intention" and cannot be made the basis of an estoppel; and in support of this contention cites *Langdon* v. *Doud,* 10 Allen, 433, *Hale* v. *Skinner,* 117 Mass. 474, and *Jackson* v. *Allen,* 120 Mass. 64, 78, 79. None of these cases is pertinent to the facts which could have been found in the case at bar. It could have been found from the conversation before February 4, 1929, between the plaintiff's representative and the defendant, that the loan was to be made by the plaintiff to the company, and the plaintiff was to receive a mortgage on the property as security for the loan; and that, in accordance with the agreement and the instructions of the defendant, the check for $600 was indorsed by the company and delivered by the latter to the plaintiff to be held by it for the defendant. It is plain that no writing was required as evidence of the sale as the property was already in the possession of the buyer. G. L. (Ter. Ed.) c. 106, § 6 (1). *Macomber* v. *Parker,* 13 Pick. 175, 183. It also could have been found that it was the intention of the parties to pass the title when the loan was made by the plaintiff and the mortgage was executed and delivered by the buyer. G. L. (Ter. Ed.) c. 106, § 20 (1). It is provided by the sales act, G. L. (Ter. Ed.) c. 106, § 20 (2), that "For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case." *Riddle* v. *Varnum,* 20 Pick. 280. *Wesoloski* v. *Wysoski,* 186 Mass. 495. *Keppnes* v. *Grossman,* 247 Mass. 142.

The evidence warranted a finding that there was a completed sale of the property to the company and that the plaintiff made the loan and took the mortgage as security with full knowledge and consent on the part of the defendant. In these circumstances we are of opinion that the defendant is estopped to deny the plaintiff's right to the possession of the property by reason of his agreements that he would make the sale if the plaintiff should make the loan. There was evidence from which it could be found that the plaintiff in good faith carried out its part of the agreement. For the defendant now to repudiate

his contract would constitute bad faith and fraud which the law will not sanction. It was said in *Stiff* v. *Ashton,* 155 Mass. 130, at page 133, "The more modern statement, that one is responsible for the word or act which he knows, or ought to know, will be acted upon by another, includes the older statement that the estoppel comes from an intention to mislead." It also includes words or conduct not consistent with honesty and fair dealing and intended to "induce action by the plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects." *McLearn* v. *Hill,* 276 Mass. 519, and cases cited at page 527. *Chapman* v. *Searle,* 3 Pick. 38, 43. *United Shoe Machinery Co.* v. *Bresnahan Shoe Machinery Co.* 197 Mass. 206, 215. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291, 292. *Silver* v. *Roberts Garage, Inc.* 240 Mass. 571. *Wiley* v. *Simons,* 259 Mass. 159, 161. *Wyman* v. *Carrabassett Hardwood Lumber Co.* 121 Maine, 271.

As the order directing a verdict for the defendant was erroneous, the entry will be

*Exceptions sustained.*