GEORGE W. SPRAGUE *vs.* RUST MASTER CHEMICAL CORPORATION & others.

Suffolk. October 10, 11, 1946. — January 14, 1947.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Contract,* For royalties, Performance and breach, Assignment, Rescission. *Equity Pleading and Practice,* Master: rulings of law; Costs. *Estoppel. Assignment. Deed,* Validity, Rescission. *Receiver.*

A claim in a suit in equity, that royalties were agreed to be paid by and were due from the defendant after a certain date under a contract in writing between him and an inventor by reason of the defendant's sales of a product in whose manufacture a certain secret process or formula was used, was denied properly where a master concluded, on

facts found by him not inconsistent with the conclusion and on evidence not reported, that the words in the contract designating the secret process or formula whose use was the basis for the payment of royalties referred to a formula which the defendant had not used after the designated date.

A manufacturer who was not liable to pay royalties under a contract in writing with the inventor of a secret process or formula would not be estopped to deny such an obligation to an assignee of the inventor, to whom he had represented that the inventor was entitled to such royalties, unless the assignee had relied upon such representation in taking the assignment.

The assignee of the rights of an inventor of a secret process or formula under a contract with a manufacturer of the product thereof could not recover royalties claimed to have become due after the assignment where it appeared that the inventor had violated a provision of the contract by giving the formula to the assignee at the time of the assignment, and that by a further provision of the contract the payment of royalties was expressly conditioned upon the inventor's performance thereof.

A master, to whom a suit in equity was referred under a rule directing him "to hear the parties, find the facts and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request," was not authorized to make a ruling of law as to the scope of a certain instrument of conveyance material to the case; such ruling was disregarded upon an appeal from an interlocutory decree confirming his report and a final decree based thereon.

A conveyance by a corporation of the right to use certain secret processes or formulae, acquired by it under a contract in writing which had been made in behalf of itself and its successors and assigns with an inventor and his assigns and which provided that such right should not be transferred by the corporation to anyone except one who had agreed with the inventor to pay certain royalties, was not rendered void by the absence of such an agreement by the transferee; but the conveyance was a breach of the contract between the corporation and the inventor and, it not appearing that the processes or formulae were of little value, an assignee of the inventor was entitled to have the conveyance by the corporation set aside and the right to use the processes or formulae reconveyed by the transferee to the corporation.

Although a conveyance by a corporation of the right to use certain secret processes or formulae was a breach of a provision of a contract between the corporation and an inventor of the processes or formulae that the right to use them should not be transferred by the corporation to anyone except one who had agreed with the inventor to pay certain royalties, such breach was not of sufficient materiality to entitle the inventor to a rescission of the contract where it appeared that the conveyance was to a partnership owning all the stock of the corporation and succeeding to its business, that the conveyance did not result in disclosure of the processes or formulae to anyone who had not already known of their composition, and that no use was being made or contemplated of the processes or formulae.

Costs in equity rest in the discretion of the trial judge, and if costs are awarded they are not to be taxed in any greater amount than at law.

A corporation was not entitled as a matter of right to have included in costs to be awarded to it under G. L. (Ter. Ed.) c. 261, § 13, in a suit in equity, expenses incurred by it as defendant on account of the appointment of a receiver, including the cost of a bond which it had furnished in order to secure the revocation of the appointment of the receiver, where an appropriate case for the appointment of a receiver was set forth in the pleadings and the corporation had not requested the court to compel the plaintiff to furnish security for the payment of such expenses in case the plaintiff should not prevail.

BILL IN EQUITY, filed in the Superior Court on March 15, 1944.

The suit was heard by *Cabot,* J., on a master's report.

*J. P. Sullivan,* for the plaintiff.

*J. W. Eastman,* (*G. W. Sears, Jr.,* with him,) for the defendant Burnen.

*E. C. Park,* for the defendants Rust Master Chemical Corporation and others.

RONAN, J. The plaintiff, Sprague, in his own right as assignee of all the right, title and interest that the defendant Burnen had in certain contracts between himself and the defendant Rust Master Chemical Corporation, hereinafter called the corporation, brings this bill of complaint to enforce the terms of said contracts against the said corporation and against a limited partnership composed of the defendants Harriman, Scott, Dudley L. Milliken and Eunice H. Milliken, doing business under the name of Rust Master Chemical Company. Burnen and Montgomery Limited, to which the plaintiff has made an assignment as his agent of the rights he acquired from Burnen, are made defendants.

The bill seeks an accounting for moneys alleged to be due from the corporation and the partnership for royalties from the sales of certain products known as Rust Master and Six Master, and seeks to set aside an alleged fraudulent conveyance of all its assets by the corporation to the partnership. The suit was referred to a master whose report has been confirmed. The case is here on appeals from an interlocutory decree, and all parties except Montgomery Limited have appealed from a final decree dismissing the bill and the

counterclaims of Burnen and Montgomery Limited without costs. The corporation and the partnership appeal because no costs were awarded to them.

Burnen, while in charge of the motor trucks of a large department store in New Jersey, became interested in 1927 in finding a preparation that would prevent the formation and accumulation of rust in the cooling systems of gasoline motors. He was not a trained chemist. Soluble oils had been used for many years as a rust preventive and Burnen, by the use of commercial products then on the market and by experiments, came to the conclusion that a mixture of soluble oils and water to which a mixture of "ultra wet" and nitroglycerin was added would produce an efficient rust preventive. His attempts in New Jersey to market this preparation were unsuccessful, and he continued those attempts after he came to Boston in 1936, first in a small way by himself and then with a corporation, E. & F. King & Co. Incorporated, hereinafter called King Co., which furnished the oil and water to which Burnen added the mixture of ultra wet and nitroglycerin. The product manufactured by King Co. was sold under the name of Rust Cure. The contents of this mixture were carefully kept as a secret by Burnen. Ultra wet is the trade name of a chemical compound which acts as a wetting agent and is used in various industries for the purpose of making a solution adhere more effectively to the substance to which it is applied. Burnen as early as 1936 knew that the nitroglycerin was of no value, and his purpose in using it was to conceal from others the true ingredients of this mixture, which was commonly known as "Formula B" and is so referred to herein. Burnen organized a corporation in 1938 to which he transferred "the right to use the secret formula for making the product known as 'Rust Cure.'" King Co. entered into an agreement with this new corporation, which remained in effect until the rights of the new corporation and King Co. were purchased by the defendant Rust Master Chemical Corporation. This corporation was organized on May 20, 1939, by the defendant Milliken, and he with his father-in-law, the defendant Harriman,

and his wife, the defendant Eunice H. Milliken, held all the stock.

On May 20, 1939, Burnen and the corporation entered into a bilateral written contract, portions of which now material are as follows.

Burnen agreed, subject only to the interests his former company and King Co. had, to transfer to the corporation all his right, title and interest in the secret formula or process for the making of Rust Cure or Rust Master and for the making of the products known as King Oil and Ghost Oil, with the exclusive right to use all said secret formulae or processes and to manufacture and sell any and all products in the making of which the said secret formulae or processes were employed, whether or not said products were the same as the products then known as Rust Cure or Rust Master, King Oil or Ghost Oil, together with all his right, title and interest in said trade names, and the right to use his name generally in the corporation's business, whether as a part of the corporate name or in connection with the name, mark, brand or other description of any of its products or otherwise. Burnen agreed that he would turn over to the corporation all new preparations that he might discover, and that he would not without the written consent of the corporation disclose to any person information with respect to such secret formulae, secret processes, or other trade secrets with reference to the formulae or processes he had already agreed to transfer to the corporation and those discovered while in its employment, "or do anything whereby any secrets involved in any of the same will be likely to become known by others."

The corporation agreed to pay Burnen for fifteen years a royalty from sales of any products in the manufacture of which it used the secret formula or process theretofore used in the manufacture of Rust Cure or Rust Master or King Oil, and that the title and interest of the corporation in the formulae or processes would not be assigned or transferred unless or until the assignee or transferee entered into an agreement with Burnen unconditionally obligating himself to make to him the same payments that the cor-

poration would have made if it had not made said assignment or transfer. The payment of royalties was expressly conditioned upon the due performance by Burnen of the obligations to be by him performed in accordance with the terms of the said agreement.

The agreement expressly provided that it should bind the corporation, its successors and assigns, and Burnen, his heirs, personal representatives and assigns. Burnen at the same time delivered to the corporation a bill of sale transferring to the corporation all that he had agreed to transfer. He delivered to the corporation a sealed envelope containing the directions for making Rust Master, King Oil and Ghost Oil. The agreement of May 20, 1939, was modified by a subsequent agreement which is not material to the present controversy. Burnen on April 23, 1942, assigned his rights in this amended agreement to the plaintiff, and the latter on the same day assigned his rights to his agent, the defendant Montgomery Limited.

The corporation soon began the manufacture and sale of Rust Cure or Rust Master, a product that generally became known by the latter name, and succeeded in building up a large business. It used formula B in the manufacture of this product, but it experienced difficulty on account of the instability of the preparation, and after consulting chemists it finally ceased on July 21, 1943, to employ this formula. It had paid Burnen or the plaintiff's assignee all royalties due up to this date from the sales of Rust Master.

The corporation in 1940 decided to make and sell a preparation for dissolving sludge in crank cases of automobiles, and Burnen while in the employ of the corporation devised the formula for this process, which became the property of the corporation and which the latter made and sold under the name of Six Master. Burnen represented that this product was the same as King Oil, although it was not; and although the corporation was not liable to pay any royalty from the sales of Six Master, it paid such royalty as a result of the misrepresentation of Burnen until July 21, 1943.

Before the plaintiff on April 23, 1942, purchased Burnen's

rights in his agreement with the corporation, he received a letter from the corporation dated April 22, 1942, stating that it was understood that he was contemplating purchasing Burnen's rights to royalties from the sales of Rust Master and Six Master by virtue of an agreement of May 20, 1939, amended April 12, 1940, and further stating that Burnen was not indebted to the corporation and was entitled to receive the said royalties. The assignment from Burnen to the plaintiff incorporated therein the agreement with the corporation of May 20, 1939, as amended on April 12, 1940, and the bill of sale given by him on May 20, 1939, to the corporation. The plaintiff gave valuable consideration for this assignment from Burnen and the latter delivered to the plaintiff an envelope which contained the formula or process for Rust Master, omitting formula B, and also the formula for Six Master.

The corporation on October 30, 1943, conveyed all its assets to a limited partnership in which Milliken was the general partner and his wife, Eunice H. Milliken, Harriman and Scott were limited partners. [1] The partnership has continued to manufacture Rust Master in accordance with the formula adopted by the corporation on July 21, 1943, and to sell it under the trade name of Improved Rust Master in all instances except one, and also to manufacture and sell Six Master.

Sprague contends that he is entitled to royalties from the sales of Rust Master even if formula B is not used in its manufacture because this formula was only an ingredient forming a part of the secret formula or process which comprised not only this ingredient but also soluble oil and water; that the substitution of pine oil for formula B did not make any essential change in the process; and that the manufacture and sale of Rust Master according to this changed process entitles him to royalties under the contract which provides for the payment of royalties from sales of all products in which there is used the secret formula or process.

---

[1] As nothing depends upon the set-up of the partnership we pass the point that a wife cannot be a partner in her husband's firm. *Lord* v. *Parker*, 3 Allen, 127. *Morrison* v. *Morrison*, *ante*, 133, 134.

It is plain upon the findings of the master that the only thing secret about the entire process was formula B. The master has found that the words secret formula or process used in the manufacturing of the product known in the trade as Rust Cure or Rust Master, as used in the contract between Burnen and the corporation, meant formula B, and that neither the corporation nor the partnership has since July 21, 1943, used this formula in manufacturing Rust Master. This conclusion of the master is supported by and is consistent with all his various subsidiary findings. Moreover, it purports to be based not solely upon these subsidiary findings but upon all the evidence heard by him, and comes within the familiar rule that an ultimate finding made by a master upon unreported evidence must stand where there is nothing in the subsidiary findings that is inconsistent with his general finding. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. *Turner* v. *United Mineral Lands Corp.* 308 Mass. 531, 534. *Brodie* v. *Evirs*, 313 Mass. 741, 744. *Van-Buskirk* v. *Diamond*, 316 Mass. 453, 459. *Gadreault* v. *Hillman*, 317 Mass. 656, 660.

The plaintiff next contends that he is entitled to the payment of royalties from the sales of Six Master. The master found that the formula for the manufacture of this product was devised by Burnen while he was an employee of the corporation, and that it was the property of the corporation. The formula for the manufacture of this product was not the formula used in the manufacture of King Oil. Burnen was not entitled to any royalties from the sales of Six Master. It was not one of the products named in his agreement of May 20, 1939, and it had nothing to do with any secret formula or process he then transferred to the corporation. But the plaintiff contends that the corporation is estopped to set up these facts because the letter of April 22, 1942, stated that the corporation was paying Burnen royalties from the sales of Six Master under its agreement of May 20, 1939, as amended April 12, 1940. The corporation had been misled by Burnen into believing that Six Master and King Oil were the same and had consequently paid royalties from sales of Six Master;

and it entertained this belief when the letter was written to Sprague. The fact that the corporation was honestly mistaken would not relieve it from a liability predicated on estoppel if the statement was made with the reasonable expectation that the other party would rely upon it and if he did so to his harm. It is enough if the circumstances are such that it would be inequitable to permit one to deny the truth of his statement. *McLearn* v. *Hill*, 276 Mass. 519. *Raldne Realty Corp.* v. *Brooks*, 281 Mass. 233. *Looney* v. *Trimount Theatres, Inc.* 282 Mass. 275. *Hayes* v. *Gessner*, 315 Mass. 366. Compare *Ford* v. *Rogovin*, 289 Mass. 549. There are no findings as to whether the plaintiff, before he took the assignment from Burnen, believed that King Oil and Six Master were prepared by the same formula. *Beacon Trust Co.* v. *Souther*, 183 Mass. 413. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169. The agreement between Burnen and the corporation made no mention of Six Master. That agreement, which was incorporated in the assignment to Sprague, did not in terms impose any liability upon the corporation to pay royalties from the sales of Six Master. The master made no finding as to whether or not the plaintiff relied upon the letter before he took the assignment from Burnen. But it is not necessary to recommit the report for a further finding upon this issue because, for another reason disclosed by the report, Sprague is not entitled to royalties from the sales of Six Master. Burnen never had any interest whatever in Six Master and, whether the plaintiff thought Six Master was or was not one of the products upon which royalties were to be paid, he must be presumed to have known that by the terms of Burnen's agreement, which was made a part of Burnen's assignment to him, the giving by Burnen and the receipt by Sprague of the formula for Six Master constituted a violation of Burnen's agreement with the corporation, and that the violation, as expressly provided in that agreement, freed the corporation from the further payment of royalties. An assignee cannot enforce rights due from the other party to a contract without performance by his assignor of the duties on which such rights are conditioned. *O'Connell* v.

*Root*, 254 Mass. 218.  *Joly* v. *Stoneman*, 271 Mass. 352. *Rothenberg* v. *Newton Mortgage Corp.* 273 Mass. 399.  *Williams* v. *Whitinsville Savings Bank*, 283 Mass. 297.

Sprague further contends that the master erred in ruling that the conveyance of October 30, 1943, from the corporation to the partnership did not convey the right to use the secret formulae or processes, and that neither the corporation nor the partnership had broken the written agreement with Burnen.  The reference in this case did not authorize the master to make these rulings of law.  He was limited to rulings that were involved in hearing the evidence and in deciding the facts, including those that were mixed questions of law and fact. [1]  The rulings in question must be disregarded.  *New England Foundation Co.* v. *Reed*, 209 Mass. 556, 562.  *Bradley* v. *Borden*, 223 Mass. 575, 586.  *Dittemore* v. *Dickey*, 249 Mass. 95, 112.  *Clark* v. *State Street Trust Co.* 270 Mass. 140, 149.  *Lithuanian Alliance of America* v. *Staliulionis*, 284 Mass. 287, 290. See *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 406.

The partnership was not a party to the agreement with Burnen.  That agreement provided that the right to use the formulae or processes should not be transferred to anyone except one who had agreed with Burnen to pay the royalties. The corporation conveyed to the partnership all its property, both real and personal, and "its patent rights, patents, trade mark, trade name, good will, rights, interests and assets, of every kind and description, owned or controlled by it," and the partnership assumed the liabilities of the corporation. Both the corporation and the partnership concede that the conveyance is broad enough to include the formulae and processes mentioned in Burnen's agreement with the corporation; but the corporation contends that it had no power to convey except on the condition that the transferee had first entered into an agreement with Burnen to pay the royalties, and that, as that condition was never complied

---

[1] The rule in this case directed the master "to hear the parties, find the facts and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request." — REPORTER.

with by the partnership, no title to the use of these formulae and processes vested in the partnership. The power to assign was not prohibited but restricted, and assignments not made in compliance with the prescribed conditions cannot be said to be void even though they would constitute a breach of contract. The provision relative to assignment dealt with the power of the corporation itself, as that was the only party to the bilateral agreement of May 20, 1939, that could become an assignor. The language of this provision must be considered as the language of the corporation and, we think, should be construed as a promise by the corporation not to assign to one who had not made an agreement with Burnen or his assigns to pay royalties. Restatement: Contracts, §§ 260, 261. Furthermore, this provision was for the benefit of Burnen and his assignee, and the transfer as between the corporation and the partnership was not void unless challenged by him or his assigns. The effect of the provision, we think, was not to make the transfer null and void but, because of the transfer, to create a breach of the agreement. *Merrill* v. *New England Mutual Life Ins. Co.* 103 Mass. 245, 252. *Hewins* v. *Baker,* 161 Mass. 320. *Fuller* v. *New York Fire Ins. Co.* 184 Mass. 12. *Wakefield* v. *American Surety Co.* 209 Mass. 173, 177. *H. P. Hood & Sons* v. *Perry,* 248 Mass. 350. The conveyance itself was not, so far as appears, expressly conditioned upon the making of an agreement by the partnership with Burnen before it was to become effective. *Putnam* v. *Grace,* 161 Mass. 237. *Howland* v. *Plymouth,* 319 Mass. 321.

The effect of the conveyance of October 30, 1943, if it included the formulae and processes in question, was not to give the partnership the right to use them as against Burnen and his assigns. The partnership as a result of the conveyance occupied a position somewhat similar to that of the assignee of a lessee under a lease which provided that the lessee should not assign or underlet without first having the written consent of the lessor. Such an assignment becomes valid if it is recognized by the lessor. *Saxeney* v. *Panis,* 239 Mass. 207. *Paeff* v. *Hawkins-Washington Realty Co. Inc. ante,* 144. *Whitehouse Restaurant, Inc.* v. *Hoffman,*

*ante,* 183. *Maybury Shoe Co.* v. *Izenstatt, ante,* 397. If it was null and void when it left the hands of the lessee, it is hard to see how it could acquire vitality by the subsequent conduct of the lessor. Such an assignee might enforce the assignment against the lessee if there was no interference by the lessor. *Milkman* v. *Ordway,* 106 Mass. 232, 260. See *Rainault* v. *Evarts,* 296 Mass. 590, 593.

The master made no finding as distinguished from his ruling that the formulae and processes were conveyed by the corporation, and it is our duty to draw the proper inferences from the facts found by the master, if we are satisfied that these facts are sufficiently comprehensive, and to decide the case. *Adams* v. *Whitmore,* 245 Mass. 65. *Morin* v. *Clark,* 296 Mass. 479, 485. *Greeley* v. *Flynn,* 310 Mass. 23, 27. *Distasio* v. *Surrette Storage Battery Co.* 316 Mass. 133, 135. The partnership succeeded to the business of the corporation. It has lawfully acquired the right to manufacture and sell Six Master, to use the trade name Improved Rust Master, and to enjoy other advantages which had their source in the agreement between Burnen and the corporation. Even if no use of the formulae and processes which came from Burnen on May 20, 1939, was being made by the corporation at the time of the conveyance to the partnership, we cannot say that these formulae and processes had then been finally abandoned by the corporation or that they were of no value. Considering the nature of what was indisputably conveyed with reference to what the corporation had acquired from Burnen, and also having in mind the wording of the conveyance, we are of the opinion that these formulae and processes passed to the partnership.

Burnen, who filed a counterclaim, goes farther than Sprague, and contends that the conveyance constituted a breach of his agreement with the corporation and warrants a rescission of the contract. We must consider the materiality of this breach. The partnership owns all the capital stock of the corporation, and the partnership thereby became the beneficial owner of all the assets of the corporation including what it acquired from Burnen. The conveyance merely conveyed to the partnership whatever legal title the

corporation had. This conveyance did not result in disclosing the composition of any of the Burnen formulae or processes to anyone who did not know their composition before the conveyance. The conveyance seems to have been little more than a transfer by a group doing business in a corporate form to almost the same group doing business under the form of a limited partnership. No use is being made of any formula or process which Burnen on May 20, 1939, transferred to the corporation. Neither is there anything indicating that use in the future is contemplated. In these circumstances the conveyance did not go to the essence of the agreement, and apparently has not resulted in any actual damage to Burnen or his assigns. The case is not a proper one for the rescission of the agreement. *Wilson* v. *Mulloney*, 185 Mass. 430. *Runkle* v. *Burrage*, 202 Mass. 89. *Plumer* v. *Houghton & Dutton Co.* 281 Mass. 173. *Barry* v. *Frankini*, 287 Mass. 196. *De Angelis* v. *Palladino*, 318 Mass. 251.

The formulae or processes, the use of which had been granted by Burnen to the corporation, cannot be said to be of little value in view of the profits realized by the corporation from the use of one of these formulae in the manufacture and sale of Rust Master. Sprague, as assignee of Burnen, has a present right to protect his interests in these formulae or processes, and also the right to contract with any transferee of the corporation with reference to the payment of royalties. The agreement between the corporation and Burnen ran to his assigns, and so did the assignment of Burnen to Sprague. The right to deal with the assignee of the corporation was merely incidental to the protection of the property, and Sprague has the right to have the conveyance from the corporation to the partnership set aside. *Shumway* v. *Collins*, 6 Gray, 227. *Bartlett* v. *Greenleaf*, 11 Gray, 98. *Saxeney* v. *Panis*, 239 Mass. 207. *Adamowicz* v. *Iwanicki*, 286 Mass. 453.

There was no error in failing to award costs to the defendants corporation and partnership. Costs in equity rest in the discretion of the judge, and if costs are awarded they are not to be taxed in any greater amount than at law.

G. L. (Ter. Ed.) c. 261, § 13.  *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258.  *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 534.  *Barnes* v. *Springfield,* 273 Mass. 283.  *Chartrand* v. *Chartrand,* 295 Mass. 293.  The allegations of the bill and the admissions of the corporation and the firm in the answers set forth an appropriate case for the appointment of a receiver,[1] and the expenses incurred by the defendant corporation on account of the appointment of the receiver, especially the cost of a bond it furnished in order to secure a revocation of the appointment of the receiver, did not as a matter of right entitle it to have these expenses or any of them included in the costs.  If the corporation desired to protect itself from such expenses, it should have requested the judge to compel the plaintiff to furnish security for the payment of these expenses in case the plaintiff did not prevail.  *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 211.  *Martin* v. *Murphy,* 216 Mass. 466.  *Weinberg* v. *Goldstein,* 241 Mass. 259.

The exceptions to the master's report, in so far as they relate to the facts found and to the failure of the master to make further findings, were rightly overruled.  *Minot* v. *Minot,* 319 Mass. 253.  The ruling of the master that the defendant corporation was not estopped to show that it had not agreed with Burnen to pay royalties from the sales of Six Master has become immaterial, but the rulings of law that the formulae and processes did not pass to the partnership and that the corporation did not thereby break its agreement with Burnen were erroneous and the exceptions to them must be sustained.  We have disregarded these rulings, and have determined the substantive rights of the parties from the facts found by the master and the inferences to be drawn therefrom.  *Danforth* v. *Chandler,* 237 Mass. 518, 522.  There was no error in denying the plaintiff's motion to require the defendants to elect whether they were to affirm or disaffirm the agreement of Burnen with the corporation, *Corey* v. *Tuttle,* 249 Mass. 135, nor in denying the motions to recommit.  *Minot* v. *Minot,* 319 Mass. 253, 261.

---

[1] As prayed for in the answer of the defendant Burnen, a receiver of the defendant corporation was appointed. — REPORTER.

The interlocutory decree is reversed; and an interlocutory decree is to be entered sustaining the exceptions to the two rulings referred to above and confirming the report as thus modified, denying the motions to recommit, and denying the motion to require the defendants to elect whether they were to affirm or disaffirm the agreement of Burnen with the corporation. The final decree is reversed, and a new final decree is to be entered dismissing the bill as to the defendants Burnen and Montgomery Limited and the counterclaims of these two defendants, but not dismissing the bill as to the plaintiff, and containing a provision that the partnership be ordered to reconvey to the corporation all right, title and interest in the formulae and processes which were conveyed to it by the corporation, being the formulae and processes conveyed to the corporation by the written agreement of May 20, 1939, and granting the plaintiff no further relief. No costs are to be awarded to the defendants but the plaintiff is to have costs of this appeal.

*So ordered.*