SHELDON S. KENT *vs.* WILLIAM H. PALLATRONI & another.

Bristol.   October 28, 1957. — January 15, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Joint Enterprise. Contract*, For joint enterprise, Performance and breach. *Equity Pleading and Practice*, Bill.

Following the making of an agreement between the plaintiff and the defendants for a joint venture in the ownership and operation of a fishing vessel, providing that, in consideration of a substantial sum paid by the plaintiff, a corporation would be organized to which the vessel would be transferred by an existing corporation of which the defendants were the principal stockholders, that the plaintiff should receive one half of the stock of the new corporation and execute a note to the defendants, that the vessel might be mortgaged by the new corporation, that the defendants should "immediately proceed to effect said incorporation and transfer . . . also . . . the mortgaging of said vessel by the new corporation, and if the . . . [defendants] shall not have proceeded diligently in these matters within a reasonable length of

time . . . they shall return . . . [the payment made by the plaintiff] and all rights of the parties shall thereupon terminate," a conclusion was not warranted that the plaintiff was in default under and abrogated the agreement by reason of his refusal to become personally liable on a proposed note and mortgage of the vessel to be given by the new corporation upon its organization, and, it appearing that the defendants, mistakenly believing that the plaintiff was thereby in default under the agreement, did not proceed diligently to effect the incorporation and the transfer of the vessel, the plaintiff was entitled to a return of his payment. [645–646]

In the circumstances, one of three joint adventurers for the ownership and operation of a fishing vessel, under an agreement providing that it should be transferred by a corporation, of which the other two joint adventurers were the "principal stockholders," to a new corporation to be formed with the three as stockholders, had no interest in the proceeds of insurance received upon the sinking of the vessel at a time when the new corporation had not been formed and title to the vessel stood in the name of one of the other two joint adventurers as agent for the existing corporation, which was not a party to the agreement. [646]

Where the bill in a suit in equity sought to recover only under an agreement for a joint venture, this court in the circumstances declined to adjudge related matters arising after the agreement was abrogated by the defendants. [647]

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated March 30, 1955.

The suit was heard by *Smith,* J., on a master's report.

*Solomon Rosenberg,* for the plaintiff.

*Felix F. Perrone,* for the defendants.

WHITTEMORE, J. The plaintiff seeks an accounting from the defendants under an agreement for a joint venture in the ownership and operation of a fishing vessel. The plaintiff filed objections (that is, exceptions, Rule 90 of the Superior Court [1954]) to the report of a master and appealed from the interlocutory decree, which overruled the exceptions and confirmed the report, and from the final decree which dismissed the bill of complaint.

The agreement of the parties was dated January 29, 1954. Relevant provisions are these: "In consideration of the sum of two thousand dollars . . . paid by . . . [the plaintiff, the defendants] do hereby agree: (1) That a corporation will be organized . . . that the fishing vessel . . .

presently owned by Pal-Roy, Inc., of which . . . [the defendants] are the principal stockholders, shall be transferred and assigned to said corporation free and clear of all encumbrances for a purchase price of twenty-one thousand dollars . . . . (2) It is further understood and agreed that one half . . . of the capital stock of said corporation shall be issued to . . . [the plaintiff and one half to the defendants]. (3) That . . . [the plaintiff] shall execute to . . . [the defendants] a promissory note in the amount of eighty-five hundred dollars . . . payable on demand. (4) It is agreed that the . . . [plaintiff] shall serve as master of said vessel, and shall receive as compensation for his services as master whatever compensation shall from time to time be customarily paid to masters of similar fishing vessels fishing out of any port from which the said vessel may operate . . . [and (5) will so] serve faithfully and diligently . . . so long as any of the indebtedness referred to in paragraph '2' [*sic*] remains unpaid . . . [and (6) so long as he does so the defendants] will not demand payment of said note except out of . . . [the plaintiff's] share of dividends or profits to be paid by said corporation. . . . (8) It is further understood and agreed that the vessel . . . may be mortgaged by the corporation for an amount not to exceed twelve thousand dollars . . . . (9) It is hereby further agreed that the . . . [defendants] shall immediately proceed to effect said incorporation and transfer of the . . . [vessel] consistent with all maritime regulations, rules and laws relative to the organization of corporations, also for the mortgaging of said vessel by the new corporation, and if the said . . . [defendants] shall not have proceeded diligently in these matters within a reasonable length of time, consistent with said maritime rules, regulations, etc., they shall return said payment of two thousand dollars . . . to the said . . . [plaintiff], and all rights of the parties shall thereupon terminate."

The master's report finds relevant facts as follows: The joint venture was for the purpose of shrimp fishing out of Texas ports as the fishing business out of New Bedford,

where the vessel was based in January, 1954, was then very quiet. The plaintiff acted as master in sailing the vessel from New Bedford to Port Lavaca, Texas, and upon arrival proceeded with preparations for shrimp fishing. The defendant Pallatroni proceeded "with the incorporation of the vessel . . . under the laws of . . . Texas" and the delivery of the "charter and approved by-laws . . . to the First National Bank at Port Lavaca . . . where organization of the corporation was to be completed including election of officers, issuance of stock, and loan or loans from said bank were to be negotiated . . . ." Upon completion of these steps the plaintiff was to execute his promissory note for $8,500. These steps were not completed because the bank informed the defendant Pallatroni that the requested note and mortgage would have to be executed not only by the new corporation but also by the plaintiff and the defendants individually, and the plaintiff declined to sign. His reluctance was related to information which indicated that the "entire picture was economically unfavorable." Thereafter "after conferring with and obtaining the approval of the defendant Royce, the defendant Pallatroni caused the latter to send to Pallatroni from New Bedford, Massachusetts, . . . a bill of sale from Pal-Roy, Inc., duly executed by the defendant Royce as an official of said corporation." Pallatroni then "caused the ownership of the . . . [vessel] to be changed over to . . . [his own name]," mortgaged it to the bank to receive a loan, and insured it in his own name as individual owner for $30,000. The plaintiff on March 17 and 28, 1954, took the vessel on two very unsuccessful shrimp fishing trips without the knowledge and contrary to the instructions of the defendant Pallatroni (the defendant Royce was in New Bedford at all relevant times) and on April 14, when (as we infer and as alleged in the bill of complaint, although it is not expressly found) the vessel was on a third fishing trip, it was sunk and became a total loss. "I find that although no money passed from the defendant Pallatroni to the defendant Royce for the bill of sale . . . to Pallatroni from Pal-Roy, Inc., said Pallatroni

was acting as agent for said corporation in the situation caused by the default of the plaintiff . . . [and after collecting the insurance proceeds] Pallatroni made a full and accurate accounting therefor to Pal-Roy, Inc. . . . ." The plaintiff "by his refusal to become personally liable on the note and mortgage to the First National Bank of Port Lavaca . . . abrogated the . . . agreement . . . ." The agreement "was not consummated due to the refusal of the plaintiff to comply with its terms and his nonperformance of his obligations as set forth thereunder." The venture contemplated was very unsuccessful for the plaintiff and the defendants and, except for the sinking, all stood to lose and the plaintiff should not be allowed to profit from the uncontemplated sinking. There was no oral agreement succeeding the abrogated agreement and neither plaintiff nor defendants are indebted to each other.

There were findings in respect of a mortgage on the vessel outstanding when the agreement was made, and a later mortgage placed thereon by the defendant Pallatroni. They are not significant in our view of the case.

There was no summary of the evidence under Rule 90 of the Superior Court (1954). The questions before us are the sufficiency in law of the subsidiary facts found to sustain the ultimate conclusions and the final decree. Although not in desirable form in this respect, we think the report sufficiently indicates as to certain "findings," which were objected to, that, whether ultimate findings or rulings, they are based solely on the facts found. These include (as stated in the objections): (4) "that the plaintiff defaulted his obligation under the agreement" and (6) "abrogated the agreement," (9) "that the agreement was not consummated due to the refusal of the plaintiff to comply with its terms and his nonperformance of his obligations as set forth thereunder" and (13) "that the defendants are not indebted to the plaintiff for any obligation arising out of the agreement."

Objection 15 (that the master failed "to find that the plaintiff was entitled either to receive his $2,000 deposit and payment for his services or one half of the net proceeds

of the insurance less $8,500") states in effect the plaintiff's contention of alternative rulings of law required on the facts found. It does no more than address the attention of the court to the plaintiff's contentions of law. The view we take of the case makes it unnecessary to consider other objections.

The conclusion that the plaintiff abrogated the agreement was not reasonably open. Doubtless the joint venture contemplated that all concerned were to coöperate in respect of necessary detail much of which was unexpressed. But the agreement in paragraph (9) quoted above expressly put the obligations to make the transfer and to mortgage, so far as there was an obligation to mortgage, upon the defendants. The extent of the plaintiff's financial obligation was expressly stated. There is no room to extend it by implication to include a personal commitment to help raise money on a mortgage.

The facts found show that the provision of the agreement for repayment to the plaintiff of his $2,000 had become applicable. The defendants did not effect the incorporation and the transfer of the vessel nor proceed diligently in respect thereof consistently with "maritime rules, regulations, etc." The power of the defendants to act in the premises is implicit, if not express, in the agreement. It recited that the defendants were the principal stockholders of Pal-Roy, Inc. The permission to mortgage did not qualify their obligation to "effect said incorporation and transfer" so as to make it conditional upon their ability to place a funding mortgage upon the vessel either with or without personal indorsements. The undertaking was absolute: "the said Pallatroni and Royce do hereby agree . . . [that the vessel] shall be transferred and assigned to said corporation free and clear of all encumbrances for a purchase price of twenty-one thousand dollars." The defendants failed to go forward because of their mistaken belief that the plaintiff was in default. This did not excuse failure to act with diligence in the premises. See *McDonough* v. *Almy*, 218 Mass. 409, 415–416. The defendants abrogated the agree-

ment when they insisted that the plaintiff sign the mortgage note and failed to proceed with the incorporation and transfer when he declined to do so.

The facts found do not permit a ruling that the plaintiff had an equitable interest in the proceeds of the insurance. We cannot go behind the finding that Pallatroni held title to the vessel as agent for Pal-Roy, Inc. That corporation was not a party to the agreement, and the recital in the agreement that the defendants were its "principal stockholders" did not exclude other substantial stock interests. There is no basis for a conclusion that title was held in the interest of the joint adventurers.

We construe the agreement as placing the obligation to pay for services rendered thereunder upon the corporation which was to be formed, and to provide that the only obligation of the defendants thereunder if the corporation was not formed within a reasonable time because of their fault was to pay back the $2,000. In view of this construction the absence of a finding as to whether it was contemplated that the plaintiff was to be paid by the corporation for services after the vessel left New Bedford is not significant.[1] The plaintiff was taking the chance, under the agreement, that the corporation might not be formed.

The absence of a right to recover from the defendants for services under the agreement does not mean that the plaintiff may not be entitled to payment for services rendered after the agreement was abrogated by the defendants.[2] But

---

[1] The master found that "the services performed by the plaintiff and two defendants in connection with the preparation and equipping of the . . . [vessel] for the trip to Texas was part of their contribution to the venture and . . . neither the plaintiff or said defendants are entitled to any compensation therefor"; also, as to the expenses assumed or paid by the defendant Pallatroni after the vessel reached Texas, that "he was to be reimbursed after the vessel was remortgaged by the new corporation to be formed . . . ."

[2] The facts found do not include some important dates but it is found that the vessel was in Texas waters for approximately six weeks prior to its sinking and that the defendant Pallatroni conferred with the local bank promptly after its arrival. Thus there may have been a period of about four or five weeks after abrogation of the agreement during which the plaintiff was on the vessel or acting in connection with its maintenance. There is indication in the report that the defendant Pallatroni, apparently after the abrogation of the agreement, expected the plaintiff to be in charge during a trial run to check compass and equipment. The unauthorized fishing trips may not have

we construe this bill of complaint as seeking to recover only under the agreement, as originally written, or as allegedly modified by an oral undertaking to continue it in effect with a partnership in place of the corporation. To be sure, paragraph 3 of the complaint declares broadly for services performed in Texas and prayer 3 asks that "all obligations of the parties . . . be ascertained and a just and true account . . . stated," but these averments and the prayer speak reasonably as subordinate to the main cause shown, which is the alleged agreement. It is not required that the court proceed to adjudge related matters under its discretion to do so. *Blume* v. *William Shenkel & Sons Co.* 266 Mass. 15. *Florimond Realty Co. Inc.* v. *Waye,* 268 Mass. 475. The substance of the report suggests strongly that the issue of the right to recover apart from the agreement, if the plaintiff had not abrogated it and the defendants had, was not in fact tried. Certainly it is not foreclosed by the report which bases the general conclusion, mistakenly, on the plaintiff's abrogation and ends with the finding that an accounting is not required because the plaintiff abrogated the written agreement, no oral agreement was made for a partnership to carry out the terms of the written agreement in place of the proposed corporation, and the defendants are not indebted to the plaintiff, or vice versa, "under said written agreement."

By noting, as we now do, that our disposition of the case does not foreclose the plaintiff's rights, if any, to recover in an appropriate action for services after the agreement was abrogated we intend no suggestion on the merits; all the relevant facts are not before us.

The master found that the defendant Pallatroni advanced the plaintiff the sum of $300 "of which two hundred dollars . . . was to take care of expenses in the return of the plain-

occupied all of the four or five weeks' period. As to the rights to recover for beneficial services rendered in expectation of payment see *Fitzgerald* v. *Allen,* 128 Mass. 232; *Vickery* v. *Ritchie,* 202 Mass. 247, 249; *Oatley* v. *Duprey,* 312 Mass. 281, 285–286; Restatement: Contracts, § 348. As to the right to elect to sue either an agent or his undisclosed principal see *Williams* v. *Investors Syndicate,* 327 Mass. 124, 127.

tiff, his son and another crew member to Massachusetts for the purpose of bringing another boat owned by Pal-Roy, Inc., to Texas" and $100 "was advanced directly to the plaintiff for the purpose of holding the plaintiff available for further service on a vessel owned by Pal-Roy, Inc., and not as a loan to the plaintiff." There is no basis in these findings for concluding that any part of the $2,000 owed by the defendants to the plaintiff has been repaid, or for deducting any amount as a set-off.

The findings include facts showing that the plaintiff manifested to the defendant Pallatroni his desire to have the $2,000 and that he employed an attorney in Texas who attempted unsuccessfully to attach money or property. We cannot rule that there was a demand for the $2,000 prior to the filing of the bill of complaint.

The interlocutory decree is to be modified by sustaining the plaintiff's fourth, sixth, ninth and thirteenth exceptions and confirming the master's report as so modified (*Meehan* v. *North Adams Savings Bank,* 302 Mass. 357, 366) so far as it states findings of fact. See *Bova* v. *Clemente,* 278 Mass. 585, 586; *Sprague* v. *Rust Master Chemical Corp* 320 Mass. 668, 677. The final decree is reversed. Final decree is to be entered in the Superior Court adjudging that the defendants are jointly and severally indebted to the plaintiff under the agreement of January 29, 1954, in the amount of $2,000 with interest from the date of filing of the bill. The plaintiff is to have costs of this appeal.

*So ordered.*