LILLIAN F. DOWD *vs.* CAPETOWN HOUSE, INC. & another.

Barnstable. October 3, 1967. — November 6, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Landlord and Tenant*, Cancellation of lease. *Equity Pleading and Practice*, Master: recommendations as to relief.

A master to whom a suit in equity challenging the validity of a lease was referred under a rule in the usual form went beyond his proper function in recommending that the lease be cancelled upon the condition that a new lease be given containing provisions deemed equitable by the master. [246]

Subsidiary findings by a master in a suit in equity justified conclusions that the sole purpose for which a ninety-nine year lease of night club premises had been given by the plaintiff to a corporation intended to operate the enterprise had been to enable the corporation to use the lease as collateral for a loan, that by reason of subordination of the lease to a first mortgage on the premises such purpose could not be accomplished, and that the terms of the lease were inequitable and had been disregarded by the corporation; and the final decree properly ordered the lease cancelled unconditionally. [246–247]

BILL IN EQUITY filed in the Land Court on October 14, 1964.

The suit was referred to a master "to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party may request." The suit was heard by *McPartlin*, J., on the master's report.

*Arthur M. Gilman* (*David G. Hanrahan* with him) for the defendants.

*Philip M. Cronin* for the plaintiff.

CUTTER, J. Under G. L. c. 185, § 1 (k), Dowd sought in the Land Court against the corporate defendant (Capetown) and one Nickerson a decree cancelling a ninety-nine year recorded lease by her to Capetown of premises in Barnstable. The case was referred to a master. The facts are stated on the basis of his findings and conclusions.

Dowd was a half owner of Capetown's stock. Nickerson owned the other half of the stock. In 1958, in return for his half interest, Nickerson agreed with Dowd to procure financing of $5,000 at once and $10,000 later to permit rehabilitation of a night club structure on the leased premises. Nickerson paid $5,000 into the corporate bank account. He was to be manager of the night club. He also secured a loan of $10,000 from his brother-in-law, one Kennedy, "secured by a . . . note" executed by Nickerson and Dowd. Kennedy became at most a creditor of Nickerson and Dowd. He sought no interest in Capetown. The proceeds of the note were put in Capetown's bank account. When the night club opened Nickerson operated "the enterprise to suit himself." He "never gave any accounting, no meetings of directors were held, and . . . [he] kept such an irregular set of . . . books that a valid accounting apparently would be impossible." The annual rent payable under the lease was $1 together with the taxes and the interest [1] and principal on a first mortgage to a bank to which the lease was subordinated. The tax and mortgage payments were not made by Capetown. Dowd was obliged to advance $10,115.74 to avoid foreclosure of the mortgage.

[1] The master's report leaves uncertain whether there was also an arrangement to pay for insurance.

The master reached the following conclusions, among others. (1) The lease was arranged for the limited purpose of providing collateral for a loan for the benefit of Capetown. That purpose never was accomplished. The subordination of the lease to the first mortgage "defeated any further attempt by . . . Capetown to raise money with the lease as collateral." (2) The rent of $1 plus the mortgage payments, taxes, and insurance was not "equitable." (3) The lease is no longer important to "this situation." Its terms have not been observed. Capetown ceased to make payments of taxes and amounts due on the mortgage. Capetown was "apparently willing to stand by and see" foreclosure of the mortgage wipe out the lease. (4) Title to the leased premises should be cleared of the lease, "a technical encumbrance (a cloud)," upon the condition that Dowd give a new, shorter term lease to Capetown with provisions specified by the master as, in his opinion, equitable.

The Land Court judge allowed Dowd's motion to strike from the report the recommendation that relief be upon the condition that Dowd give Capetown a new lease. With this portion struck out, the report was confirmed.

A final decree ordered the lease cancelled. Capetown and Nickerson appealed.

1. The master in suggesting conditional relief went beyond the matters referred to him. His duty was to find the facts bearing upon the validity of the lease. His rulings or suggestions concerning what would be a proper decree were outside the scope of his duty. See *Sprague* v. *Rust Master Chem. Corp.* 320 Mass. 668, 677; *Aurea Aspasia Corp.* v. *Crosby*, 331 Mass. 515, 518. See also *Kent* v. *Pallatroni*, 336 Mass. 640, 648. The judge properly allowed the motion to strike from the report the unauthorized recommendations concerning the conditions which the master thought should be imposed on relief.

2. The final decree was correct upon the basis of the facts properly found by the master, viz. that the lease was given for a limited purpose which could not be accomplished, and that the terms of the lease were inequitable. The master's

subsidiary findings justify these conclusions. It is plain from the master's report that the lease cannot now assist achievement of the sole purpose of its creation. Its terms have been disregarded by Capetown. Dowd, as owner of the leased premises (found by the master to be worth $80,000), is now entitled to have the lease, a cloud upon her title, cancelled. We perceive nothing in the record requiring that, for the protection of either Capetown or Nickerson, the relief now sought be made conditional in any respect.

*Decree affirmed with*
*costs of appeal.*